UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:09-cv-502-FDW-DLH

| | |
|---|---|
| JOHN CHUBIRKO, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| BETTER BUSINESS BUREAU OF SOUTHERN PIEDMONT, INC., et al., | ) |
| Defendants. | ) |

THIS MATTER is before the Court on Defendants Better Business Bureau of Southern Piedmont, Inc. ("BBB of Southern Piedmont") and Council of Better Business Bureaus, Inc.'s ("CBBBI"), Jay Ashendorf and Sue Breckenridge's, Kimberly-Clark's, Coca Cola Company, Ford Motor Company, Hershey Foods, Inc., Hewlett-Packard, International Business Machines, Inc. ("IBM"), Kraft Foods, McKinsey and Co., Quaker Oats, and Visa, Inc.'s, Verizon Communications Inc.'s, and General Mills' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Docs. Nos. 158, 161, 165, 167, 169, 171). Defendant Verizon Communications Inc. additionally moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Defendant The Proctor & Gamble Co. ("P&G") filed a separate Motion to Dismiss pursuant to Fed. R. Civ. P. 4(m), 12(b)(2), (4), and (5) for lack of personal jurisdiction, insufficient process, and insufficient service of process.[1] (Doc. No. 166). All motions have been fully briefed and are ripe for decision. For the

---

[1] Defendant Equifax Inc. Answered Plaintiff's Second Amended Complaint (Doc. No. 164) but has not moved to dismiss.

reasons set forth, Defendants' Motions to Dismiss are GRANTED and Plaintiff's Second Amended Complaint (Doc. No. 157) is DISMISSED in its entirety.

## I. BACKGROUND

Plaintiff, who is proceeding *pro se*, filed suit on November 24, 2009, against the above-named Defendants, as well as a number of others who were subsequently dismissed, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, *et. seq.*, Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and a number of state-law claims. Plaintiff amended his Complaint as a matter of course on December 2, 2009. (Doc. No. 3). Plaintiff originally attempted service on all Defendants by serving either CBBBI or BBB of Southern Piedmont. (Docs. Nos. 4, 5, 6, 7). The Court denied Plaintiff's Motions for Entry of Default (Docs. Nos. 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45) noting that his attempted service fell short of the requirements of Fed. R. Civ. P. 4. (Doc. No. 58). Plaintiff again attempted service pursuant to the requirements of Rule 4, attempting to serve either a registered agent within the state of North Carolina or the North Carolina Secretary of State. Notably, Plaintiff attempted service on Defendant P&G by issuing process to CT Corporation, which served as an agent for other named Defendants. (Doc. No. 79). In a March 24, 2010, letter, CT Corporation returned the summons issued to P&G as unexecuted, indicating that "The Proctor and Gamble Company is not listed in our records or on the records of the State of NC." (Doc. No. 121-1).

Defendants responded and each filed Motions to Dismiss on various Rule 12 grounds. (Docs. Nos. 19, 50, 55, 74, 76, 120, 122, 124, 127, 129, 132, 140). In Plaintiff's untimely Response in Opposition to Defendants' motions, Plaintiff moved for leave to amend his first Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) in the face of Defendants' motions to dismiss. (Doc. No. 147). The Court granted Plaintiff's motion, allowing Plaintiff until June 30, 2010, to file a

2

second amended complaint, and ultimately denied as moot Defendants' motions to dismiss. (Docs. Nos. 156, 173).

Plaintiff filed his Second Amended Complaint ("SAC") on June 30, 2010. (Doc. No. 157). The SAC is substantially similar to Plaintiff's first Amended Complaint and alleges violations of the Sherman Antitrust Act and RICO, as well as causes of action for conspiracy, fraud, libel and defamation, and reckless negligence.[2] The gravamen of Plaintiff's claims against Defendants is that CBBBI, working through its regional offices including the BBB of Southern Piedmont, is engaged in a large-scale "white collar protection racket" designed to extort money from small- and medium-sized businesses in the form of membership fees. Plaintiff alleges that BBB of Southern Piedmont and the other regional BBB entities penalize those smaller-scale businesses that do not pay membership fees in an effort to drive them out of business, allowing consolidation of commercial activity in member corporations, which includes the named corporate Defendants, and "enable their own global corporations to monopolize interstate commerce in the United States." (SAC ¶ 44).

Specifically, Plaintiff alleges that he is a former agent of a limited liability corporation called American Benefits Company ("ABC") that went out of business in May 2009.[3] (SAC ¶ 22). After ABC ended its operations, two of ABC's former customers allegedly filed complaints with BBB of Southern Piedmont claiming that Plaintiff owed them money. (SAC ¶ 23). Plaintiff alleges that these complaints triggered an "extortion" effort by BBB of Southern Piedmont in which the complaints were assigned case numbers and BBB of Southern Piedmont listed Plaintiff's personal

---

[2] In Paragraph 1 of the SAC, Plaintiff additionally alleges that he is suing for "invasion of privacy, [and] intentional infliction of emotional distress." However, Plaintiff does not list these causes of action in the Claims section of his SAC, and they appear to have been removed from Plaintiff's action. (Compare First Am. Compl. ¶¶ 126-149 with SAC ¶¶ 108-149).

[3] Although Plaintiff only alleges that he was an agent of ABC, other allegations contained in the SAC suggest a closer relationship existed between Plaintiff and ABC.

3

information on their website and sent "threatening" communications to Plaintiff. (SAC ¶ 27). When Plaintiff did not respond to these communications, BBB of Southern Piedmont gave Plaintiff's business an "F" rating, allegedly in an effort to "destroy Plaintiff in his business and personal reputation." (SAC ¶ 31). After Plaintiff resolved his disputes with the former customers, they withdrew their complaints and informed BBB of Southern Piedmont that their complaints were satisfactorily resolved (SAC ¶¶ 35-37), at which point Plaintiff's rating was upgraded to "D+." (SAC ¶ 38). After Plaintiff filed suit, BBB of Southern Piedmont gave Plaintiff "no rating," purportedly for lack of information regarding Plaintiff's business. (SAC ¶ 43).

Plaintiff alleges that BBB of Southern Piedmont's rating system is structured to favor its member corporations and CBBBI's corporate directors, with certain corporations maintaining "A+" ratings despite having thousands of unresolved consumer complaints. (SAC ¶¶ 45-52). Plaintiff further alleges that the rating system is structured in such a way so that only fee-paying corporate members of regional BBB associations enjoy high ratings, despite high numbers of unresolved complaints, while smaller-sized firms with only a few complaints have low ratings. (SAC ¶¶ 66-68). Furthermore, the CBBBI complaint system is actually a scheme designed to glean valuable marketing information from the consumers filing the complaints. (SAC ¶¶ 62-65).

The purpose of this "racket" is to exploit CBBBI's reputation for providing impartial and trustworthy consumer ratings in order to advance the interests of BBB member corporations while destroying smaller businesses. (SAC ¶¶ 44, 70, 73-74, 76-78, 99, 101). Plaintiff alleges that all Defendants have joined together in a massive conspiracy to "set up and operate a nationwide network of fraudulent sham non-profits for purposes of destroying small businesses and business owners and monopolizing interstate commerce for global corporate interests." (SAC ¶ 101).

Defendants now renew their motions to dismiss. Defendants all argue substantially similar

and related grounds for dismissal. Specifically, Defendants Kimberly-Clark, Coca Cola Company, Ford Motor Company, Hershey Foods, Inc., Hewlett-Packard, IBM, Kraft Foods, McKinsey and Co., Quaker Oats, and Visa, Inc., Verizon Communications Inc., and General Mills (collectively referred to as "Corporate Defendants"), and Defendants Sue Breckenridge and Jay Ashendorf argue Plaintiff has failed to state a claim against them because Plaintiff has not pled sufficient facts to hold them individually liable. (Docs. Nos. 162, 168, 170, 172). Additionally, Defendants argue Plaintiff has failed to plead sufficient facts to make out the elements necessary for each of Plaintiff's claims and that Plaintiff has not pled any actual injury and therefore lacks standing to sue. (Docs. Nos. 159, 165, 168, 170, 172). Because Plaintiff's SAC fails to sufficiently make out Plaintiff's federal claims, Defendants argue the Court lacks subject matter jurisdiction to hear Plaintiff's state-law claims. (Docs. Nos. 159, 162).

On August 2, 2010, after the instant Motions were filed, the Court issued a Roseboro notice, reminding Plaintiff of the burden he carries in confronting Defendants' motions. (Doc. No. 173).

## II. DISCUSSION

Because Defendants move for dismissal for lack of subject matter jurisdiction and jurisdiction is a threshold question, see, e.g., Discover Bank v. Vaden, 396 F.3d 366, 367 (4th Cir. 2005), the Court notes at the outset that Plaintiff has adequately alleged subject matter jurisdiction.[4]

---

[4] Defendants' challenge to the Court's subject matter jurisdiction rests principally on the failure of Plaintiff to sufficiently plead claims for relief under the Sherman Antitrust Act and RICO. Without predicate federal questions providing jurisdiction, Defendants argue the Court lacks supplemental jurisdiction to consider Plaintiff's state-law claims. (Docs. Nos. 159, 162). Accordingly, in order to determine whether it has subject matter jurisdiction in this case, the Court must first determine if Plaintiff's pleadings are sufficient to state a claim upon which relief can be granted. Additionally, Corporate Defendants argue that Plaintiff has not alleged sufficient injury in fact to satisfy the standing requirements of Article III (Docs. Nos. 165-1, 168, 170, 172). However, while Plaintiff's SAC mentions injuries sustained by third party consumers, (SAC ¶¶ 62-65), the Court notes that Plaintiff also alleges injury to himself and his business resulting from Defendants' actions. (E.g. SAC ¶ 110). At this early stage, the Court is unwilling to find that *pro se* Plaintiff has not made a sufficient showing that he has standing to bring this suit. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (identifying the elements necessary for Article III standing).

5

Specifically, Plaintiff alleges federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. § 15(a) and 18 U.S.C. § 1964(a) to consider Plaintiff's Sherman Antitrust Act and RICO claims, as well as supplemental jurisdiction under 28 U.S.C. § 1367 to consider Plaintiff's state law claims.

Additionally, the Court will assume for the purposes of this Order, without deciding, that it has personal jurisdiction over Defendants Verizon Communications Inc. ("Verizon") and P&G. Both Verizon and P&G separately move to dismiss for lack of personal jurisdiction. (Docs. No. 166, 169). They argue that Plaintiff named the wrong legal entities and therefore process and service of process are insufficient and, in the case of Verizon, the named holding company does not have sufficient ties to North Carolina to be subject to the Court's jurisdiction. (Docs. No. 121, 170). However, a misnomer in the complaint or summons is not detrimental to Plaintiff's claims, see, Morrel v. Nationwide Mut. Fire Ins. Co., 188 F.3d 218, 224 (4th Cir. 1999), and where Defendants received actual notice of the action, the service rules are given liberal construction. Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Furthermore, without an evidentiary hearing, Plaintiff need only make a prima facie case of personal jurisdiction, and the Court "must draw all reasonable inferences arising from the proof . . . in the [P]laintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). Therefore, the Court will not penalize *pro se* Plaintiff for naming "Proctor and Gamble" instead of "The Proctor & Gamble Company" (Doc. No. 121) or for failing to recognize the legal difference between "Verizon Communications Inc." (without a comma), "Verizon Communications, Inc." (with a comma) (Doc. No. 170 at 4-5), and whatever other legal entity affiliated with the "Verizon" brand that does business in North Carolina, particularly where Plaintiff's SAC is deficient and otherwise subject to dismissal, *infra* at 12-13.

Plaintiff has sufficiently pled subject matter and personal jurisdiction so that the Court may consider Defendants' motions. The Court will first consider the 12(b)(6) Motions to Dismiss Plaintiff's federal claims before turning to Defendants' other grounds for dismissal.

A. **Motions to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted**

1. Legal Standard

In order to survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. Id.

Because Plaintiff is proceeding *pro se*, the Court is obligated to construe his pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[5] Estelle, 429 U.S. at 106. However, all litigants, including *pro se* plaintiffs, are "required to conform to procedural rules, and the court is not required to rewrite deficient pleadings." Smart v. Local 702 Int'l Bhd. of Elec. Workers, 562 F.3d 798, 811 (7th Cir. 2009) (quoting Tanner v. Neal, 232 Fed. App'x. 924 (11th Cir. 2007)).

---

[5] The Court notes that Plaintiff's pleadings are not inartfully drafted, but to the contrary, are very articulated considering Plaintiff's *pro se* status.

2. <u>Insufficient Sherman Antitrust Act Allegations</u>

Turning first to Plaintiff's Sherman Antitrust Act and RICO conspiracy claims, it is clear that Plaintiff's claims for relief are not plausible on their face. As an initial matter, the sheer breadth and scope of the conspiracy alleged by Plaintiff, which, accepted as true, not only involves the named Defendants but would also require the complicity of nearly every commercial entity in the nation, alone renders Plaintiff's claims facially implausible. Corralling so many disparate entities into a concerted criminal enterprise would necessitate such organization and cooperation as to be practically impossible, let alone implausible.

<u>Twombly</u> is itself illustrative. 550 U.S. 544 (2007). As here, the <u>Twombly</u> plaintiffs, purporting to represent a class of telephone services consumers, sued a number of former "Baby Bells" for violations of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.* 550 U.S. at 550-52. After reviewing the pleading standard required to make out a claim under § 1, the Supreme Court held that the plaintiffs' complaint fell short of the mark. <u>Id.</u> at 564. Specifically, the Court held that in order to survive a Rule 12(b)(6) motion,

> a [§ 1] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

<u>Id.</u> at 556. The <u>Twombly</u> plaintiffs, whose complaint made bare assertions of conspiracy backed only by allegations of parallel conduct among the named defendants, <u>id.</u> at 557, were unable to create the inference that an agreement was made and thus could not cross "the line between possibility and plausibility of entitle[ment] to relief." <u>Id.</u> (alteration in the original) (citations omitted).

Here, Plaintiff has not alleged any facts that would be the equivalent of "parallel conduct,"

capable of providing some evidence of an agreement, and instead relies only on bare assertions and conclusory statements that Defendants are involved in a massive conspiracy. As the Twombly court noted, § 1 "does not prohibit [all] unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy." Id. at 553 (alteration in the original) (citations omitted). Even assuming that Defendants are engaged in an "unreasonable restraint" on trade, Plaintiff could only recover under § 1 if he shows that Defendants entered an agreement to collude. Id. (citing Theatre Enters., Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 540 (1954)). Plaintiff alleges that "[t]he agreement is inferred by the conduct of Defendants and the facts set forth below." (SAC ¶ 44). The "facts" set forth by Plaintiff in the remainder of his SAC, while perhaps a true reflection of the circumstances surrounding the BBB rating system, are woefully insufficient and do nothing to create an inference that an actual agreement of any kind exists among the named Defendants. See id. at 564. If the Court construes the SAC in the best light for Plaintiff, Plaintiff has only alleged that CBBBI's reputation for providing unbiased and impartial consumer rankings is undeserved. Giving the SAC an impartial reading and accepting the allegations as true, the SAC only manages to allege that Corporate Defendants are CBBBI members (SAC ¶ 43), that CBBBI has given these Defendants better ratings than it gave Plaintiff's former business (SAC ¶¶ 46, 48-50), and that BBB of Southern Piedmont gave Plaintiff's business an "F" rating before upgrading Plaintiff's rating first to "D +" and ultimately to "no rating." (SAC ¶¶ 31, 38-39, 43). Simply put, Plaintiff's SAC has not provided enough factual allegations, taken as true, to create an inference that an agreement exists among Defendants. Plaintiff's SAC therefore fails to state a claim for relief for violations of the Sherman Antitrust Act.

    3.    <u>Insufficient RICO Allegations</u>

Similarly, Plaintiff's claims for relief under RICO also come up short. RICO contains a

private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). In order to make out a claim under § 1964, Plaintiff must allege "at least two acts of racketeering activity that form a pattern of racketeering activity." Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians, 155 F.3d 500 (4th Cir. 1998). Specifically, Plaintiff must allege a "continuing pattern and relationship among the defendant[s'] activities showing they had the same or similar purposes," id. (citing H.J. Inc., v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)), and that he was "injured by reason of the pattern of racketeering activity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004) (internal quotations omitted). Additionally, "[i]n order to survive a motion to dismiss a RICO claim, a 'plaintiff must plead [the] circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).'" Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007) (quoting Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)). The pattern requirement and heightened pleading standard for civil RICO claims ensure "that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions . . . ." Menasco, 886 F.2d at 683.

Plaintiff has not demonstrated that a pattern of racketeering activity has occurred with sufficient specificity to survive 12(b)(6), or that he was injured by the RICO conspiracy. The only predicate offenses Plaintiff alleges are mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and money laundering in violation of 18 U.S.C. § 1956.[6] (SAC ¶¶ 95(e-f)). However, Plaintiff's SAC contains only conclusory statements that Defendants' conduct constitutes illegal predicate acts;

---

[6] Plaintiff also alleges that Defendants have engaged in tax fraud in violation of 18 U.S.C. §§ 1001-1002 and 26 U.S.C. §7206. (SAC ¶ 95(d)). However, these crimes are not predicate offenses for the purposes of RICO. See 18 U.S.C. § 1961(1); Beck v. Prubis, 529 U.S. 494, 497 n. 2 (2000) (noting that § 1961(1) contains an exhaustive list of predicate offenses).

there are no facts alleged that create the "reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Plaintiff has provided no allegations of the contents of the allegedly fraudulent wires and mailings, nor has he provided any facts indicating that the statements contained in the wires or mailings were untrue. Additionally there is no indication that the alleged money laundering, that is, "the fraudulent transfer of charity non-profit funds to the BBB" (SAC ¶ 95(f)) involved the proceeds of a specified unlawful activity. See § 1956. Therefore, because Plaintiff has failed to plead "the time, place, and content of the false representations, the person making them, and what the person gained from them," Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999), he has failed to plead the specificity required to demonstrate that the alleged predicate acts constitute a pattern of racketeering activity. See Williams, 245 F.R.D. at 244.

Furthermore, Plaintiff does not claim that he was injured by the fraudulent representations alleged to have been made by Defendants. In fact, Plaintiff admits that he did not "submit" to the alleged extortion effort behind the fraudulent mailings and wires, and therefore has suffered no injury from Defendants' allegedly fraudulent conduct. (SAC ¶ 129).[7] Additionally, Plaintiff does not allege that he suffered any injury by reason of Defendants' alleged money laundering efforts. Instead, Plaintiff asserts that the victims of Defendants' predicate acts were other small businesses and business owners as well as the public at large. (SAC ¶¶ 86, 92-94, 95(e-f)).

Plaintiff is correct in his assertion that he need not demonstrate first-party reliance on Defendants' fraudulent statements in order to make out a claim under § 1964. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 661 (2008) (holding that "a plaintiff asserting a RICO claim

---

[7] On page 19 of Plaintiff's SAC, the paragraph numbers jump from No. 111 to No. 129 in successive paragraphs. This numbering error continues through the remainder of the SAC.

predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations"). However, Bridge did not abrogate the requirement that Plaintiff must demonstrate that the injuries to his business were the proximate result of Defendants' fraud. Id. at 654. To meet RICO's causation requirement, Plaintiff must plead "some direct relation between the injury asserted and injurious conduct alleged. . . . A link that is too remote, purely contingent, or indirect is insufficient." Hemi Group, LLC v. City of New York, ___ U.S. ___, 130 S. Ct. 983, 989 (2010) (internal quotations omitted). Here, the fraud allegedly perpetrated on third-parties–CBBBI's misrepresentation of its true business purpose in an effort to extort membership fees and glean marketable personal information (SAC ¶ 95(e))–is not the direct cause of the injury to Plaintiff. Instead, Plaintiff alleges his injuries are actually the result of defamatory business ratings by Defendants. (SAC ¶ 129). The link between the fraud alleged and the injury suffered is too attenuated to support a RICO claim because the cause of Plaintiff's harm was a set of actions (receiving poor BBB ratings) entirely distinct from the alleged RICO violations (defrauding third-party businesses and individuals). See id. at 990 (citing Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458-59 (2006)). Without more information, the Court is unable to infer that a pattern of racketeering activity has occurred, and thus Plaintiff has failed to satisfy the heightened pleading standard required for civil RICO claims.

Accordingly, Plaintiff's federal claims, for violations of 15 U.S.C. § 1, *et seq*. and 18 U.S.C. § 1964 are DISMISSED with prejudice. Although the Court agrees with Corporate Defendants and Defendants Breckenridge and Ashendorf that Plaintiff has pled insufficient facts to hold these Defendants individually liable, see, e.g., Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985) (describing the elements necessary to pierce the corporate veil in North Carolina), because the

underlying federal conspiracy claims are dismissed, the Court need not address this issue further.

B.      **Motions to Dismiss for Lack of Subject Matter Jurisdiction**

Although the Court has only addressed Defendants' 12(b)(6) Motions as they pertain to two of Plaintiff's six claims for relief, the Court now returns to the question of its subject matter jurisdiction to consider the remaining claims.

The Court had supplemental jurisdiction to consider Plaintiff's state law claims for conspiracy, fraud, libel and defamation, and reckless negligence. See 28 U.S.C. § 1367(a); (SAC ¶ 3). However, because the Court has dismissed Plaintiff's federal claims, which provided the original jurisdiction necessary to assert statutory supplemental jurisdiction over Plaintiff's state law claims, the Court now declines to exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to § 1367(c)(3).[8] See Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S. Ct. 1862, 1866-67 (2009).

Plaintiff's remaining state law claims are therefore DISMISSED without prejudice.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the following Motions are GRANTED: Defendants BBB of Southern Piedmont, Inc. and Council of Better Business Bureaus, Inc.'s Motion to Dismiss (Doc. No. 158); Defendants Jay Ashendorf and Sue Breckenridge's Motion to Dismiss (Doc. No. 161); Defendant Kimberly-Clark's Motion to Dismiss (Doc. No. 165); Defendants Coca-Cola Company, Ford Motor Company, Hershey Foods, Inc., Hewlett-Packard, IBM, Inc., Kraft Foods, McKinsey and Company, Quaker Oats, and Visa, Inc.'s Joint Motion to Dismiss (Doc. No. 167);

---

[8] The Court notes that, although Plaintiff has not alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332, the requirements of diversity have not been satisfied. Specifically, Plaintiff and Defendants BBB of Southern Piedmont, Breckenridge, and Ashendorf are all citizens of North Carolina. (SAC ¶¶ 6-8). See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553-54 (2005).

Defendant Verizon Communications, Inc.'s Motion to Dismiss (Doc. No. 169); and Defendant General Mills' Motion to Dismiss (Doc. No. 171).

Plaintiff's SAC is hereby DISMISSED in its entirety for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction as to all Defendants.[9]

Defendant P&G's Motion to Dismiss (Doc. No. 166) is therefore DENIED as moot.

IT IS SO ORDERED.

Signed: February 10, 2011

Frank D. Whitney
United States District Judge

---

[9] Defendant Equifax Inc. is included in this Order despite its failure to move for dismissal. Because the purpose of Rule 12(b)(6) is to test the sufficiency of the complaint, see, e.g., McBurney v. Cuccinelli, 616 F.3d 393, 408 (4th Cir. 2010), the Court may dismiss a complaint under Rule 12(b)(6) *sua sponte* where the allegations in the complaint are insufficient to state a claim. See Grier v. United States, 57 F.3d 1066 at *1 (4th Cir. 1995) (per curiam) (unpublished table opinion) (holding *sua sponte* dismissal is appropriate where "it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations in [the plaintiff's] complaint"); Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n. 10 (4th Cir. 2006) (recognizing that a court may *sua sponte* dismiss a complaint for failure to state a claim because the failure of a complaint to state facts entitling the plaintiff to relief "is fundamentally different" from unasserted but waivable affirmative defenses). The Court has already determined that Plaintiff's SAC has failed to sufficiently state a claim for relief under either the Sherman Antitrust Act or RICO, and, with no claims unique to Equifax Inc., the Court need not wait for Defendant Equifax to raise its own challenge to the sufficiency of Plaintiff's SAC. Additionally, the Court's discretionary decision to decline supplemental jurisdiction applies to each of Plaintiff's state-law claims and against all Defendants.